NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Noel ARMSTRONG, III and Cristina ARMSTRONG, | |
| Plaintiffs, | Civ. No. 09-716 |
| v. | OPINION & ORDER |
| Detective Sergeant Victor J. SHERMAN, Colonel Joseph R. FUENTES and STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF STATE POLICE, | |
| Defendants. | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment [docket # 30] and Defendant Victor Sherman's Motion for Summary Judgment [33]. The Court has decided the motions upon consideration of the parties' written submissions and without oral argument. For the reasons given below, Plaintiffs' motion is DENIED, and Defendant Sherman's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

This lawsuit concerns a truck-driver's allegations of an unlawful seizure and the use of excessive force by a New Jersey State Police officer who pulled Plaintiff over and physically hauled him out of his truck.

On July 23, 2007 around 1:00 p.m., Plaintiff, who is fifty-nine years old and has been employed as a truck driver for twenty years, was driving a commercial tractor trailer south on the

New Jersey Turnpike in northern New Jersey. (Pl.'s Statement Undisputed Material Facts ["PSF"] ¶¶ 1-2.) At the same time, Defendant—an officer with the New Jersey State Police—was wearing civilian clothes and driving an unmarked sport utility vehicle northward on the turnpike in the same general area. (*Id.* ¶ 3.) Defendant encountered a traffic jam and made a u-turn through a break in the median in order to head south. (*Id.*) Plaintiff observed the u-turn in front of him, blew his horn, and proceeded to pass Defendant's SUV. (Def.'s Statement Undisputed Material Facts ["DSF"] ¶ 6.) The parties disagree as to whether Plaintiff tailgated Defendant before passing him.

The parties then exited the turnpike at Exit 7A. (PSF ¶ 5.) Defendant claims that, as they approached the toll booths, Plaintiff moved his vehicle to the left, forcing Defendant out of the lane he was in. (*Id.* ¶ 6.) Plaintiff disputes this characterization, insisting he drove in a straight line while approaching the toll booth. (*Id.* ¶ 7.) Plaintiff has provided the Court with video footage which partially shows the parties' operation of their vehicles as they passed through the toll booth area. (*See* Br. Supp. Pl.'s Mot. Partial Summ. J. Ex. P-23.) After passing through the toll plaza, Defendant activated "wigwag lights, flashers and strobe lights" on his vehicle. (DSF ¶¶ 10, 12.) Plaintiff then entered the exit ramp, with Defendant following him. (*Id.* ¶ 13.) As they moved down the exit ramp, Plaintiff pulled his vehicle to the right in order to block Defendant's attempt to pass or pull alongside him on the shoulder. (*Id.* ¶ 14.) After exiting the ramp onto highway 195 westbound, Defendant pulled alongside Plaintiff, waved identification at Plaintiff, and then pulled in front of Plaintiff. (Br. Supp. Pl.'s Mot. Summ. J. Ex. P-32, Dep. Noel Armstrong 50-52.) Plaintiff then pulled his vehicle over to the side of the road. (*Id.*; DSF ¶ 15.)

When both vehicles had come to a stop at the side of the road, Defendant got out of his SUV, approached Plaintiff's truck, and told Plaintiff to get out of his vehicle. (DSF ¶¶ 16, 19.) Plaintiff, however, locked his doors and called 9-1-1, apparently concerned that Defendant—who was not dressed in a police uniform—might not be a genuine police officer. (*See* Armstrong Dep. 52-54.) Defendant raised his voice and swore at Plaintiff in an effort to induce him to leave his vehicle. (DSF ¶ 20.) According to Plaintiff, Defendant also started banging his pistol on Plaintiff's windshield. (Armstrong Dep. 58). A little while thereafter, Plaintiff unlocked the door to the vehicle (DSF ¶ 34), though according to Plaintiff, he only did so after Defendant broke one of the truck's windows and pointed his firearm at him (Armstrong Dep. 63-64). Defendant then told Plaintiff to get out on the passenger side of the truck, to which Plaintiff objected, stating he would get out on the driver's side because there were materials piled up on the passenger side of the cab. (DSF ¶¶ 36-37; Armstrong Dep. 65-66.) Defendant grabbed Plaintiff by the shoulder and succeeded in pulling him out of the cab on the passenger side. (DSF ¶¶ 38-39.) Plaintiff alleges that, in doing so, Defendant strained Plaintiff's fingers, causing an injury for which ibuprofen and ten days of physical therapy were prescribed. (Armstrong Dep. 67-68, 75-78.) Shortly thereafter, Washington Township police arrived, Defendant left the scene, and Plaintiff went to the Hamilton Square State Police substation, where the police wrote up a report. (*Id.* at 70-74.) Plaintiff was not charged with any crime or infraction related to this incident.

## ANALYSIS

I. Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49.  Accordingly, if the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

While a party moving for summary judgment must, of course, produce evidence supporting those elements essential to its case, it is not obliged to produce evidence specifically disproving those elements essential to its adversary's case.  The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial.  *Id.* at 323-24.

II. <u>Fourth Amendment Claims Related to the Stop of Plaintiff's Vehicle</u>

Both parties move for summary judgment on Plaintiff's claim that Defendant violated the Fourth Amendment prohibition of unreasonable seizures when Defendant pulled Plaintiff over. Plaintiff argues that Defendant did not have probable cause to believe Plaintiff committed any traffic violations which would have justified a stop.  Defendant argues that he needed only reasonable suspicion, not probable cause, to justify his stop and that he had such suspicion based

on three of Plaintiff's actions—(1) blowing his horn after Defendant made the u-turn across the highway median, (2) forcing Defendant out of his lane as the two vehicles approached the toll booth, and (3) pulling his vehicle in front of Defendant to prevent Defendant from passing him on the exit ramp. As will be presently explained, Defendant is correct that he needed only reasonable suspicion to justify his stopping Plaintiff; however the evidence currently before the Court does not establish beyond dispute whether or not Defendant in fact had such reasonable suspicion.

An officer needs probable cause of a crime or traffic violation to make a full-blown arrest but requires only reasonable suspicion to make a temporary stop. *United States v. Johnson*, 592 F.3d 442, 447-48 (3d Cir. 2010). The difference between an arrest and a mere traffic stop lies in the duration and invasiveness of the seizure under the circumstances. *See United States v. Sharpe*, 470 U.S. 675, 686 (1985); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995). In this case, Defendant's stop did not escalate to the point where it can be properly characterized as an arrest. Defendant's actions consisted of stopping Plaintiff's vehicle, shouting at Plaintiff and perhaps intimidating him, and ultimately forcibly removing Plaintiff from his vehicle. As the Third Circuit has held on multiple occasions, stopping a vehicle and approaching with a weapon drawn does not, of itself, qualify as an arrest. *Johnson*, 592 U.S. at 448; *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995). The fact that Defendant pulled Plaintiff out of his vehicle and required him to stand at the side of the vehicle does not rise to the level of an arrest either. Handcuffing a suspect does not necessarily count as an arrest (*Johnson*, 592 U.S. at 448; *Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3d Cir. 1995)), so neither should the mere act of removing a person from his or her vehicle. Finally, Defendant did not detain Plaintiff for a

particularly long duration of time. Accordingly, Defendant merely performed an "investigative stop" in this case, and he needed only reasonable suspicion to justify his actions.

Reasonable suspicion is a less onerous standard than probable cause. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). However, an officer making an investigative stop still "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006) (quoting *United States v. Cortez,* 449 U.S. 411, 417-18, (1981)). A court making a reasonable suspicion determination must look at the "totality of the circumstances" and consider the fact that an officer has "experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting *Cortez*, 449 U.S. at 418). In this case, Defendant's stated basis for suspecting Plaintiff of criminal activity consisted of his own observation of Plaintiff's driving. Defendant identifies three incidents that would justify an investigative stop: Plaintiff's use of his air horn, Plaintiff's driving while approaching the toll booth, and Plaintiff's driving while on the exit ramp.

New Jersey Law provides that "the driver of a motor vehicle shall, when reasonably necessary to ensure safe operation, give audible warning with his horn but shall not otherwise use such horn when upon a highway." N.J. Stat. Ann. § 39:3-69. Plaintiff and Defendant dispute the circumstances under which Plaintiff used his air horn. There is presently nothing in the record aside from the parties' testimony bearing on this question. Therefore, a jury trial is needed to resolve the parties' competing accounts as to what happened.

New Jersey law also provides that, "A person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely

to endanger, a person or property, shall be guilty of reckless driving." N.J. Stat. Ann. § 39:4-96. Plaintiff and Defendant give conflicting accounts as to precisely how Plaintiff drove his vehicle while approaching the toll booth. While the video camera footage of the tollbooth is evidence that is relevant to this dispute, it does not plainly contradict either party's testimony. Therefore, a material question of fact remains as to whether or not Defendant had reasonable suspicion to stop Plaintiff based on Plaintiff's driving in the toll booth area.

Finally, there is also a genuine dispute of fact with regard to Plaintiff's driving on the exit ramp. Plaintiff admits that he moved his truck in front of Defendant's SUV while the two vehicles were on the exit ramp. However, this admission does not, of itself, establish that Plaintiff was driving in a manner that would qualify as reckless driving under N.J. Stat. Ann. § 39:4-96. And beyond Plaintiff's admission, the only available evidence consists of the parties' conflicting accounts of what happened. Therefore, it is not clear as a matter of law whether or not Defendant had reasonable suspicion to stop Plaintiff's vehicle.

The evidence does not demonstrate conclusively whether or not Defendant had reasonable suspicion to believe that Plaintiff's driving on July 23, 2007 violated any law. Since neither Plaintiff nor Defendant has shown that he is entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claims for an unreasonable traffic stop, the Court will not enter summary judgment in favor of either party on that portion of the Amended Complaint.

   III. <u>Fourth and Fourteenth Amendment Claims for Excessive Force</u>

Defendant Sherman also moves for summary judgment on Plaintiff's claim that Defendant used excessive force in removing Plaintiff from his vehicle. A police officer who uses excessive force in the course of his or her duties violates the Fourth Amendment's prohibition of unreasonable searches and seizures. *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir.

2006). In determining whether the amount of force used is excessive, the Court looks at several factors, including

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight . . . the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Id.* at 496-97 (citations omitted). Courts making this analysis must be sensitive to the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Defendant Sherman has not shown that there is no genuine factual dispute on the issue of excessive force. According to Plaintiff, Defendant Sherman drew his firearm, pointed it at Plaintiff, threatened to shoot him, and then broke the window of Plaintiff's truck. At the same time, the available evidence does not show beyond dispute that Plaintiff acted threateningly. Plaintiff initially refused to unlock the door to his truck when Defendant commanded him to do so, but the record does not reflect how much time Defendant allowed to pass before drawing his gun. Furthermore, Plaintiff's allegations that Defendant was acting threateningly would explain Plaintiff's reluctance to unlock his door, especially since Defendant was dressed in civilian clothes when he approached Plaintiff's truck. In short, the only factor identified above that would seem to justify an elevated level of force is Plaintiff's resisting Defendant's orders. All the other factors are either uncertain or else counsel in favor of using a low degree of force. While the injury Defendant caused in hauling Plaintiff out of the truck does not appear to have had any permanent effects, such injury is not necessary to prove a claim of excessive force. In fact, merely pointing a firearm at a person can constitute excessive force if such action is not

8

justified by the circumstances. *See Black v. Stephens*, 662 F.2d 181, 188-89 (3d Cir. 1981). Since it is not clear that Defendant Sherman's use of force was objectively reasonable, Plaintiff's excessive force claims cannot be resolved on summary judgment. *See Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) (explaining that since there is no clearly-defined rule for determining reasonableness, excessive force claims will frequently raise a question of fact for a jury).

  IV. <u>Cristina Armstrong's Per Quod Claim</u>

Defendant Sherman also moves to Dismiss Plaintiff Cristina Armstrong's per quod claim, which is brought under the New Jersey Civil Rights Act and the New Jersey State Constitution for the loss of "the marital comfort, care and support of her husband." (Am. Compl. ¶48.) Defendant makes two arguments as to why that claim should be dismissed: (1) There is no evidence that Cristina Armstrong's own civil rights were violated, and (2) the New Jersey Tort Claims Act bars monetary awards for pain and suffering against public entities and employees, except where there has been a permanent loss of bodily function. The Court reaches only the first of these two arguments.

The New Jersey Civil Rights Act is a state law corollary to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution. The parties have not provided the Court with any case law bearing on the question of whether or not a per quod or loss of consortium claim may be brought under the New Jersey Civil Rights Act, and this Court's own research has uncovered none. Therefore, this Court must undertake to determine how the New Jersey courts would rule if faced with this question. As was just stated, the New Jersey Civil Rights Act is a kind of analog to section 1983. Notably, the majority of federal courts to consider the question of whether or not section 1983 supports a claim for loss of

consortium have decided that it does not. *Shaw v. Stroud,* 13 F.3d 791, 805 (4th Cir. 1994); *Niehus v. Liberio,* 973 F.2d 526, 534 (7th Cir. 1992); *Stallworth v. City of Cleveland,* 893 F.2d 830, 838 (6th Cir. 1990). In *Niehus*, the Seventh Circuit based its holding on the notion that the Constitution protects only a limited set of important rights; it does not afford protection to the kind of lesser benefits encompassed by the concept of "consortium." 973 F.2d at 534. In *Stallworth*, the Sixth Circuit took a subtly different approach, reasoning that the wording of section 1983 afforded relief only to persons whose rights were actually invaded—not to persons who suffered harm from the deprivation of another person's rights. 893 F.2d at 838. The reasoning in these cases—which dealt with federal law—would not, of course, be binding on a New Jersey court interpreting New Jersey law, but it is nonetheless persuasive and relevant in this case. There is no reason to think that the New Jersey Supreme Court would hold that the state's constitution protects a husband or wife's right to marital comfort and spousal support. And the language of the New Jersey Civil Rights Act, like the language of 42 U.S.C. § 1983, appears to grant a cause of action only to those persons whose rights have been personally violated. Therefore, this Court holds that Plaintiff Cristina Armstrong may not recover on her per quod claim.

## CONCLUSION

For the foregoing reasons, IT IS, this 4th day of June, 2010,

ORDERED that Plaintiff's Motion for Partial Summary Judgment [30] is DENIED; and it is further

ORDERED that Defendant Victor Sherman's Motion for Summary Judgment [33] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that JUDGMENT shall be entered in favor of Defendants and against Plaintiff Cristina Armstrong on the Seventh Count of the Amended Complaint.

>    */s/  Anne E. Thompson*
>        ANNE E. THOMPSON, U.S.D.J.